taken under submission and we thank both counsel for their argument. The final case for today, or not final, I guess we have two more. Our next case for today is 2017-1049 Sterling versus Shulkin Please proceed. Yes, ma'am.  We're here today on an appeal from a dismissal from the Court of Appeals for Veterans Claims. This is a relatively straightforward issue. Under 1792A, this court has jurisdiction to review decisions de novo by the Court of Appeals of Veterans Claims concerning the challenge to an interpretation of a statute, regulation, or rule. And under case law that we cited from this court, the court does have the authority to review whether or not the Court of Appeals of Veterans Claims errs a matter of law and using an improper legal standard in dismissing an appeal. In this case, what we're talking about is the presumption of regularity. And just a brief review of the facts is on September 22nd, 2015, the veteran, which is the veteran's widow, received an unfavorable board decision issued on September 22nd, 2015 and mailed out on that day. The mail was returned as undeliverable. She contacted the board, I believe sometime in November 2015, and they informed her that the mail was returned as as undeliverable, and she gave an updated address for which she received. She filed an appeal, I think, 121 days after the original decision of September 22nd, 2015, the CAVC issued a rule to show cause as to why to why the appeal should not be dismissed as untimely. They dismissed the appeal as untimely, and they relied on on on prior precedent wherein they established that a two-pronged test must be met. First of all, the appellant must first establish that the mailing was returned as undeliverable, and the CAVC stated that she met the first prong. Then they added in a second prong, which is that other possible and plausible addresses available to the secretary was at the time of the board's decision. She argued, they argued that the second prong was not met, and so then therefore they dismissed the appeal as untimely. But you've asked for a rule of law that just says if it's clear the veteran didn't receive it, then the clock shouldn't start ticking, right? Essentially, yes, ma'am. Yes, ma'am. But see, the problem with that is, what if that doesn't the veteran have some obligation to update their own address with the VA in this process? What if the veteran never updates, it moves, then years later comes back. It gets undelivered, years later comes back. Should that claim have remained pending the whole time? I understand your client was diligent. This has nothing to do with your client. This has to do with me being concerned that you're asking for a rule of law that would, apart from the sympathetic facts of your case, not work in many, many, many other cases. I'm not sure how often, how often from a practical sense that that happens, because most veterans, at least the ones that I deal with, usually are pretty up-to-date with their claims. I mean, isn't the problem, you're essentially asking us to read this statute, that the time for notice of appeal as running from receipt. And there are statute, there are time for appeal periods out there that run from receipt. But this one doesn't. 7266 says it runs from the date it's mailed. Pursuant to some other statute, which says the VA mails it promptly to the last known address. So, if the time runs from mailing to the last known address, then that was met here, wasn't it? Talking about, are you talking about if the time was, from the time it was mailed the first time, or the time... Well, it doesn't matter which one. The statute that runs the time of appeal says that the notice of appeal must be filed within 120 days after the date on which the notice of decision is mailed, pursuant to section 7104. So, the mailing date is what causes the statute, or the time for appeal to run, right? That's correct. That's correct. And 7104 requires the board to mail a copy of the decision to the last known address. That's correct. And so, if those, that's where you get the second requirement that they mail to the last known address, and if perhaps they didn't mail to all known addresses, then you may get a presumption that it wasn't, the time shouldn't have run. Well, you don't have that. Well, my argument is that, and I understand your argument, I guess the point that I made in my brief is that the purpose of this presumption of regularity is to, is to address the issue of whether or not a veteran received the mailing or not. But that's not true, is it? Isn't the presumption of regularity, it's not to show that veteran received it, because we apply it in cases where there's a question of whether the VA actually mailed it. Because that's the critical date for the time to appeal to run. Look, I have a lot of sympathy for your client. I mean, even after not getting it, and apparently having allegations of homelessness and the like, she still filed one day later. That's a different question. The statutory question of when the time for appeal runs, and the presumption of regularity attaching to that, is based upon the fact that VA mailed it to the last known address. And you're asking us to read out something that's not only kind of a common-sense, you know, use of the presumption of regularity, but something in the statute. Well, I think that the way that I understand what the presumption of regularity is, is that, is that, is that it's used in situations where, where the veteran states, where the veteran states, I didn't receive it. And, and, and, and what the court end up applies to say, okay, well if the mail doesn't come back as undeliverable, or if it, or if it, you know, was sent to the right address, we pretty much say, well, we presumed that you actually received it. But it was sent to the right address. It was sent to the only address on file. That is correct. That is correct. Can I ask you about the facts? So, it was September 22nd when the board decision was sent to the address on file, and it came back to the board as September 22nd. And then, in this case, Mrs. Sterling called the VA inquiring about the status of her case in October. I don't remember the precise date. But then the weird thing is, I'm kind of wondering what she was told in October. The record doesn't explain it to me. But the reason I ask, is she called in October, probably roughly a month after the case was actually resolved, and I'm just dying to know what she was told. Was she told it was resolved? And the reason I ask, is because then they didn't send, she called back in, I guess, in November, and at that time, updated her address. And they sent, at that time, a copy of the September decision to the address that she gave them when she updated it in November. And I guess I'm just sort of curious why it couldn't have been mailed to her in October, why she wasn't told about the decision on the phone. What happened in October? She called, there's no question, she called on this record to inquire what was going on with her case, and it had already been decided. So, at that point, why did she then not get a copy of the decision until at least a month later? I do not know the answer to that question, and as far as I can tell, that the record doesn't reflect an answer to my question. It does not reflect an answer, so that's the best answer that I can give. But that was her address, even then, was it not? The Dixie address. I believe so. I believe so. That's what the record says. Yes, yes, yes. And they didn't send it there. They waited until another address? I believe so. I believe maybe she was going back and forth between, between, between two addresses, as far as I can tell. Well, I, out of curiosity, I understand that she was pro se in the early stages of this process, but I am just beside myself that there isn't an equitable tolling argument here, because I can't imagine a better case for it being required to have been granted. And yet, there, it doesn't seem to be an argument. The words aren't even in your brief, so. Well, well, I'm not quite sure, and this is a question that I did not know the answer to. I kind of read that I wasn't sure if the court would have jurisdiction to review a factual determination made by the Court of Appeals of Veterans Claims, arguing that there was not equitable tolling. Now, I mean, I guess maybe the court could maybe say that if it's, that, that it could be like an error as a matter of law, whenever the facts are not in dispute, whenever the facts are not in dispute, that they made an error as a matter of law in arguing as to why there shouldn't be equitable tolling. And clearly, the Supreme Court has stated that equitable tolling is available, but I had a little bit of concern about the jurisdictional question, and that's why I didn't brief it that way. Did you make the equitable tolling argument below? The Veterans Court decision notes that you, that you, she alleged homelessness and the like, but she didn't allege that that was the basis for not being able to timely file, and therefore it wouldn't reach equitable tolling. I think that the Court of Appeals of Veterans Claims did state that. Let me ask you this. The record is a little thin here. We need to get everything. She was pro se, then you represented her. Did you file any kind of brief to the Veterans Court? No. Well, in fact, I believe, if I'm mistakenly corrected, I thought that she was pro se at first, and she hired another counsel. Are you just here on appeal? I'm just here up to the federal level. Are you aware of any brief filed by counsel below on equitable tolling? I didn't notice, but the only reason why I say that is because when she come in to see me, she showed me a letter showing that she had previous counsel. Well, you presumably looked at the record. Was there a brief filed at the Veterans Court on her behalf arguing for equitable tolling? Yes. Yes, in fact, there was. But it's not in the materials you gave us. It is. I mean, you only gave us the decision. The government gave us some additional stuff, but do you remember what it argued? I mean, it's hard for us to piece this together when we don't even know what was argued to the Veterans Court. Yeah, but the argument that they made essentially was that equitable tolling equitable tolling because of the, you know, because of the homelessness issue. I think that that's exactly what the Veterans Court said they didn't make. Yeah. So, yeah, and you know, and it was my understanding whenever I looked at the brief that that was, that that was more of their argument, but I, but I did not put that in there because I was concerned about whether or not this court would even have you know, would have jurisdiction because it's a review of a factual issue. As we both know, the court has limited. I mean, you wouldn't be the first one to argue factual questions to us. It seems to me like you should have at least made some attempt to preserve that issue. Okay, well, we'll save the rest of your time for rebuttal. Let's hear from the government. Can you help me with what was given to the Veterans Court on this issue? All of you, I mean, you gave us some additional materials, and I'm not faulting you for not giving us everything, but you gave us her handwritten notice of appeal, which, if that was all we had, I think I would send this back and say the Veterans Court didn't properly consider this, but clearly at some point there was some argument about equitable tolling because the Veterans Court suggested that it wasn't going to reach it because insufficient arguments have been made. Your Honor, I don't have it in front of me, but I am familiar to some degree with the, there's a revised brief that the Veterans Court permitted Ms. Sterling to file once she did have an attorney, and this was after the VA had filed its preliminary file. And what was in that brief? Was it this argument that we have before us today? Was it an equitable tolling argument, or was it both? It didn't entirely specify, Your Honor. It was a very short, I believe about three pages, that it also included a declaration, attached a declaration from Ms. Sterling. It didn't say either, we think this court should find that the presumption had been rebutted, or that this court should find equitable tolling. It basically explained her circumstances, explained that she had been homeless for on and off during the previous years, also explained that she was living at that Dixie Drive address in But then, so wait, what I don't understand is the record, it doesn't seem to be disputed, that she then called in in October, okay? Yes. If the, if the address of record, the VA knew she didn't get the September thing, it came back. Yes, Your Honor. And she's calling in in October asking diligently, where is it? Why didn't you remail it to the Dixie address at that time? Your Honor, isn't that your obligation? It came back, you knew she didn't get it. My apologies, Your Honor. The record suggests that the VA did in fact remail it to the Dixie Drive address when she contacted in October. And what happened to it? It's unclear. Ms. Sterling, I believe, has asserted that she did not receive it, but it was never returned as under, or there's no record of it being returned. Okay, so the VA did, after she called in, the VA did mail another copy to that same address. Yes, Your Honor, and so there's a record of the, her call, her, the intake at the VA of her call at our Supplemental Appendix on page 73, and then the cover letter that was sent back out with the October mailing, remailing of the September decision, which is at the Supplemental Appendix page 75. And so then she called in in November, and did she, she must have again asserted, I have not yet received this opinion, and updated her address, because then the VA sent it to the new address? Yes, Your Honor. So, just out of curiosity, she was pro se, and when you have pro se veterans, aren't you supposed to interpret the pleading as raising every claim, or give them sort of every benefit? Why didn't you interpret her pleading as one of equitable tolling? Well, Your Honor, it seems that the Veterans Court, to some extent at least, did. They addressed the question of equitable tolling. The problem that they had, both based on her initial brief, and on her revised brief, was that there was no claim that, the only potential ground for equitable tolling, the only extraordinary circumstance that they could have pieced out of her briefs, was this allegation of homelessness. And there was no indication in her, either of her briefs, that the claim was equitable tolling, for most of this. For part of it, yes. And, and so there's certainly representations that she was diligent by calling the office, calling with a new address, and the like. There are also allegations that she was homeless during parts of this time. Is it really her obligation to say, on the record, the reason I didn't receive this was because I was homeless, and therefore you should equitably toll? I mean, in these circumstances, isn't it the Veterans Court's obligation, particularly when it's one day, to look at this sympathetically, and realize it meets all of the elements for equitable tolling. She acted diligently. There were certainly delays in receiving this that, you know, may have been somewhat her fault in updating, but she still was diligent. I mean, it's, it's really one day. I mean, this is almost unconscionable that the Veterans Court didn't accept this notice of appeal. It is one day, Your Honor, and that, that does cut both ways, but the problem with the equitable tolling argument was one of the elements is causation, and she actually filed a declaration saying that she lived at that address that the VA initially mailed the decision to during that time period, during September of 2015. No, I get it. This is not about the statutory argument, but it seems to me that if, if that's the case, and the VA follows the statute, then your argument is going to be that there's almost never equitable tolling. I mean, I can't think of a clear case for equitable tolling and somebody coming in and saying you may have complied with the statute. This may have been my address. I may have been living there, but I was, I mean, it seems to me like she was shuttling back and forth between various relatives' houses. That's what I gather from the record. I didn't receive it. I called. I still didn't receive it. I called again, or gave a new address. Finally, I received it, and then filed. And then acted promptly. Yeah, I mean, I, if there, if this isn't a ground for equitable tolling in the Veterans Court, then what possible grounds are there? Well, Your Honor, the, the quintessential case of, of homelessness as a, and again, the Veterans Court does need to find an extraordinary circumstance. That is the requirement for equitable tolling, and in that, the, the ideal or quintessential case involving homelessness is where there was no address at which the veteran could have received, the claimant could have received the, the decision at the time. And in this case, the facts that are undisputed, that are in fact put forth by the claimant. Well, that may be an essential one, but if you have somebody that is, is not, you know, regularly housed, and they're shuttling back and forth between various places to live, and they do their best to try to update addresses, even if it was mailed to this address, if this wasn't her house, or if she wasn't living there regularly, if there were other people, and they threw out the mail, how is that her fault? I mean, as long as she's acted diligently, and showed that the reason that she didn't get this was she wasn't in a regular residence throughout this period, and then that when she finally did receive it, she acted diligently, then I, I just don't understand how any reasonable fact finder could determine that this isn't grounds for equitable tolling. Your Honor, the Veterans Court in this case determined that she was not, in fact, homeless as of the relevant time period in this case. No, not the relevant time period. They said in September of 2015. She doesn't assert she was homeless then. Correct. Right, okay, so, but we know she didn't receive it because it went back. Yes, Your Honor. So what if she was homeless from October on to November? You know, what, what if, I mean, she was, it says that she was homeless for several years, and it doesn't say none of the times when she was homeless was any of the relevant time period. The Veterans Court doesn't make those findings. It does not make those findings, Your Honor, but it, there, there is no connection. She, again, she confirmed this mailing address when she called in October, and, and to the, to the court asking it to resend this decision, which it did. There, there is no showing in the record that that could not be delivered, or that she no longer lived there at that point. And to the extent that the Veterans Court applied these facts to the, the equitable tolling standards, it did so correctly. Well, I'm not sure it did it correctly, but I assume your argument would be that it's a factual determination that we can't review. Or an application thereof. Yes, Your Honor. It certainly doesn't seem correct to me. And as Your Honor pointed out earlier, the equitable tolling argument, well, again, the second brief is not in the record before the brief of Ms. Sterling or the Veterans Court. Can I just direct you, I mean, I'm sure you're familiar with the Veterans Court's decision, because it's very short, but the last sentence is, under these circumstances, the court concludes that it need not consider whether equitable tolling is warranted. Isn't that different than it considered it and determined it not to be available? Your Honor, that, that line is, I admit, a bit unclear, but it does explain that it recognizes that homelessness can be that extraordinary circumstance, but it does apply the, the the causation requirement to that, to Ms. Sterling's situation in saying that she doesn't assert that she was homeless during the cause of the untimely filing of her notice of appeal. So you would have us infer from that, that it, the court did consider equitable tolling and decided it wouldn't echoably toll, even though it said it need not consider whether it's warranted? It's just fuzzy language. I understand. That is certainly fuzzy language. I think this is also somewhat indicative of the fact that the court is bringing up this equitable tolling question sort of on its own. There wasn't... Well, that's another problem for me. We don't have in the record that filing from her counsel... Yes, Your Honor. ...to determine whether he made that argument or not, or she made that argument. I don't know who it was. Have you read that filing? I have. And we were talking about this before, and never mind, I don't need to rehash that. But you said you didn't remember that it was in there. I am confident that the filing did not use the phrase as either presumption of regularity or equitable tolling. It simply explained her circumstances and said that under these circumstances, the court should find that this notice of appeal was timely filed. Yeah, I'm just wondering if there was no mention of it in the briefing, why the court would feel compelled to say we're not going to... Your Honor... Otherwise, you know, it wasn't brought up. It wouldn't have mentioned it, I wouldn't think. We can certainly only speculate, Your Honor. My... Well, again, my speculation would be that it was because she brought up this allegation of homelessness. Do you think that the fact that the Postal Service did not deliver the mail when it could have, could rise to a extraordinary circumstance?  Two government agencies, I mean, you give it to one that doesn't do its job, and you say, you know, I've done my part. Your Honor, there may be such a situation. In this case, the Postal Service's notice said, and again, I don't believe a copy of this is in the record, but the undeliverable notice said, unable to forward. It's unclear why. But she was there. Yes, according to Ms. Sterling, she was there. And, Your Honor, we certainly recognize that this hopefully is an extraordinary incident. I think you just selected the wrong choice of words. I think I did, Your Honor. I thought that... It's pretty extraordinary. I recognize that the second it came out of my mouth, but I, what I meant to say is hopefully an unlikely occurrence. In the event that Ms. Sterling was, in fact, at that address, there are probably numerous reasons why the Postal Service was unable to, or could be unable to... I'm baffled. If, and maybe it's, she just didn't ask for it, but if, if, if she had counseled that it specifically set out all these factors and said, it's only one day, is that I should get equitable tolling of a statute of limitations, would the Secretary have opposed that? Again, Your Honor, if, if she could have explained how the fact of her homelessness caused her to, to be unable to file... But how much does she have to explain? I don't want to beat you up too much over this, but she was pro se at the outset. She got counsel. There are all these allegations. I mean, how specific do, does she have to say, this is, this is what led me to file a day late? Well, frankly, Your Honor, I think she has to say that. And I think the problem, again, and I don't want to rehash this too many times, but the problem that the Veterans Court has is they made a finding that she was not homeless when this decision was mailed out and when it should have arrived at her, her correct address, and that she confirmed both subsequently during the Veterans, the Veterans Court's procedures, and then in October of 2015, that she was living at that address, and that was the correct address that the Veterans Court, or that the board was using. Unless there are any further questions. Thank you, Your Honor. We would simply ask that the Veterans Court's decision be affirmed. Your Honor, do you have any more questions for me? The court has raised some issues about whether or not, about whether or not there should be equitable totaling or not, especially considering the circumstances. Okay, we thank both counsel for their argument. The case is taken.